IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY M. HERRERA,

    Plaintiff,                                    CIV S-10-1317  GGH

    vs.

MICHAEL J. ASTRUE,                        ORDER

Commissioner of Social Security,
    Defendant.

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment is denied, and the Commissioner's Motion for Summary Judgment is granted. The Clerk is directed to enter judgment for the Commissioner.

BACKGROUND

        Plaintiff, born August 5, 1956, applied for disability benefits on October 24, 2006. (Tr. at 106, 111.) Plaintiff alleged he was unable to work since September 27, 2006, due to personality disorders, substance addiction/dependence disorders, equilibrium problems, mood

1

swings, plastic jaw, anger issues, behavioral problems, forgetfulness, and plastic knee caps in both knees. (Tr. at 106, 64, 72, 80.) In a decision dated July 25, 2008, ALJ Daniel Heely determined that plaintiff was not disabled. The ALJ made the following findings:[1]

> 1. The claimant met the insured status requirements of the Social Security Act through June 30, 2006.
>
> 2. The claimant has not engaged in substantial gainful activity since October 1, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairment: antisocial personality disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P,

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
   The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|   |     |                                                                                                                                                                                                                                                                                                 |
|---|-----|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|   |     | Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.                                                                                                                                                                                                            |
|   | 5.  | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following exertional limitations: he can perform only simple, routine, repetitive tasks; he can have only occasional contact with the general public. |
|   | 6.  | The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).                                                                                                                                                                                                         |
|   | 7.  | The claimant was born on August 5, 1956 and was 49 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. The claimant attained age 50, which is defined as approaching advanced age, on August 4, 2006 (20 CFR 404.1563 and 416.963).            |
|   | 8.  | The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).                                                                                                                                                                          |
|   | 9.  | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
|   | 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).                                   |
|   | 11. | The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).                                                                                                                |

(Tr. at 14-21.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Improperly Rejected the Examining Psychologist's Opinion Without Articulating a Legitimate Basis; B. Whether the Appeals Council Failed to Properly Evaluate Dr. Forehand's Treating Psychiatric

3

Opinion; C.  Whether the ALJ Improperly Rejected Plaintiff's and Lay Witness Testimony; and D.  Whether the ALJ Failed to Credit the Vocational Expert's Testimony in Response to a Hypothetical Which Accurately Reflected Plaintiff's Functional Limitations.

This case involves plaintiff's alleged mental health issues only.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

    A.  Rejection of Examining Psychologist's Opinion

Plaintiff contends that the ALJ rejected the November 29, 2006 opinion of Dr. Morse (actually Deborah Von Bolschwing, Ph.D) without a legitimate basis.

> The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. .... And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.

4

Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).

This case centers around plaintiff's mental impairment, antisocial personality disorder, as there are no physical ailments at issue. The mental health records consist of plaintiff's California Department of Corrections ("CDC") records from 2000 through 2005, a mental health evaluation by Deborah Von Bolschwing, Ph.D.,[2] a mental RFC assessment by Dr. Middleton, an SSA state agency psychologist, and a report by Dr. Forehand, M.D., submitted only to the Appeals Council. Not having this last report before him, the ALJ relied primarily on the non-examining report of the state agency psychologist who in turn had not given Dr. Von Bolschwing great weight.

Dr. Middleton assessed plaintiff's residual functional capacity on December 19, 2006, diagnosing plaintiff with anti-social personality disorder. (Tr. at 204.) He found that plaintiff was "capable of understanding, remembering and carrying out simple and less complex tasks. He could interact appropriately with supervisors but needed reduced coworker and public contact. There was no limitation in maintaining attention, persistence and pace, and plaintiff could adapt to changes in the work setting. This state agency psychologist did not give great weight to Dr. Von Bolschwing's report "as not supported by normal exam, with lack of corroborating evidence." (Tr. at 198.)

Dr. Von Bolschwing's report diagnosed plaintiff with heroin dependence in sustained full remission (Axis I) and antisocial personality disorder (Axis II). (Id. at 194.) This diagnosis was based on plaintiff's view that violence was the way for him to survive, having spent most of his adult life in prison. (Id. at 195.) The psychological assistant had no medical records for review but instead relied on plaintiff for all information. She did, however, provide

---

[2] This examiner is listed as a Ph.D., and also as a psychological assistant. (Tr. at 192, 195.) Her report is referred to by the ALJ as having been completed under the supervision of Dr. Morris, a Ph.D. (Id. at 17.) Plaintiff refers to this psychologist by her correct name, Dr. Morse. Although it is unclear whether Von Bolschwing examined plaintiff in her capacity as a Ph.D., she will be referred to as Dr. Von Bolschwing in this analysis.

the following caveat to her exam: "[I]t should be noted that the present evaluation was limited in scope. It was based on only one session of client contact, in a structured environment, with pre-authorized tests. Background and correlative information was considered to be limited. With these restrictions in mind, the following clinical and functional impressions are offered." (Id. at 195.)

   Various tests were administered to plaintiff, including the WAIS-III, WMS-III, Trail Making Test, and the Bender-Gestalt Test-II, all of which yielded normal results. (Id. at 193-94.) Plaintiff "appeared to" be able to understand, remember, and carry out simple one or two step instructions, as well as complex instructions. "He may have moderate to marked difficulty relating to and interacting with supervisors and co-workers and the public in general due to personality volatility, anger and lack of behavioral control." He "appear[ed]" to be incapable of functioning well under the stress of work. He "appear[ed] to be unable to function satisfactorily during an eight-hour work day and five day work week." (Id. at 195.) Dr. Von Bolschwing used the aforementioned conditional and qualifying words as quoted to describe plaintiff's functional capacity, which fails to instill confidence in the reader of the report. Furthermore, the fact that this evaluator was a Ph.D. but also a psychological assistant is confusing. The subject area of her doctorate degree is not clear. If Dr. Von Bolschwing was not a licensed psychologist, her opinion would be entitled to lesser weight, despite the fact that she was supervised by a licensed psychologist, Dr. Morse.[3] See also Armstrong v. Astrue, 2010 WL 1643238, n. 5 (C.D. Cal. 2010) (relying on state agency psychiatrist who opined that there had been no real psychological testing because evaluator was not licensed psychologist but only

---

[3] The regulations differentiate between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." Id. Medical opinions from "acceptable medical sources," have the same status when assessing weight. See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

psychological assistant).

The ALJ was correct in relying on Dr. Middleton's opinion that the aforementioned report was not supported by normal examination results and the lack of corroborating evidence. (Tr. at 20.) First, Dr. Von Bolschwing had no medical records at her disposal for review, but rather relied solely on plaintiff's subjective statements regarding his condition. (Tr. at 192.) Although she found him to be a valid historian, the ALJ did not. See discussion *infra*. See also Dr. Jackson's evaluation, finding plaintiff not credible. (Id. at 215.) In any event, an opinion on an allegedly long-standing mental problem given after only a one-shot examination, *without recourse to the medical records,* is not one which can generally be relied upon.

Additionally, this evaluation is based for the most part on plaintiff's subjective complaints. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008), *citing* Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (*citing* Fair V. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)). Furthermore, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." Id.

> Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for a doctor's report based substantially on a claimant's subjective complaints as specific, legitimate reasons for disregarding the treating physician's opinion. Flaten, 44 F.3d at 1463-64; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir.1989). The ALJ is not required to accept the opinion of a treating or examining physician if that opinion is brief, conclusory and inadequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002).

Morehead v. Astrue, 2008 WL 3891464, *5 (E.D. Wash. 2008). This source's opinion is so unreliable that the ALJ was correct in rejecting it.

\\\\

The only other mental health evidence in the record are the CDC records, dated 2000 to 2005, which predate the other mental health opinions, and the belated treating psychiatrist opinion of Dr. Forehand, submitted only to the Appeals Council.

CDC records indicate that plaintiff had reported two previous psychiatric hospitalizations; however, there is no record of such admissions. To the contrary, plaintiff denied psychiatric problems while in prison and in late 2001 requested to discontinue his medication so that he could be transferred to a farm instead. He seemed to do well without medication at the farm. (Id. at 17, 18, 187-89.)

Dr. Forehand's report, dated March 7, 2008, was submitted to the Appeals Council after the ALJ's decision. This psychiatrist was plaintiff's treating source since November, 2007, according to his report; however, *there are no mental health treatment records in the record by him or any other treating source*. This boilerplate form is the sole submission by this doctor. See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for individualized medical opinions over check-off reports). It states that plaintiff was rated poor for dealing with the public, dealing with stress, and maintaining attention and concentration. He was rated fair at relating to co-workers, using judgment, and interacting with supervisors. (Id. at 246.) Plaintiff was rated in the poor category for understanding, remembering and carrying out complex instructions, but fair at understanding, remembering and carrying out detailed instructions. He was rated poor at relating predictably in social situations, and fair at demonstrating reliability. Plaintiff could behave in an emotionally stable manner if he is on medication. (Id. at 247.)

Plaintiff bears the burden of proving he suffers from a physical or mental impairment that makes him unable to perform "past relevant work." Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir.1995). The aforementioned records are simply inadequate to meet plaintiff's burden to show that his mental impairment limits his ability to work. See Anderson v. Astrue, 2010 WL 2525370, * 6 (C.D. Cal. 2010). In fact, the SSA examiner noted that although plaintiff

8

was taking medication for his mental impairment, his prescribing doctor did not indicate any significant psychiatric problems in the chart notes. Plaintiff had not been seen by any formal treating mental health source. (Tr. at 236.) Further, although the ALJ gave plaintiff's counsel time to submit additional records, the attorney submitted only Dr. Forehand's form report to the Appeals Council. (Id. at 62.)

It is true that "[t]he opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999). Nevertheless, plaintiff must come forward with some substantial [reliable] evidence to meet his burden, and he has utterly failed in this regard. In fact, plaintiff's main problem is that he cannot get along with people due to his learned "prison lifestyle" which promotes violence as a solution to problems; however, this apparent manipulation of his criminal proclivities should not stand as a basis to substantiate an award of permanent disability benefits.

B. Additional Evidence Submitted to Appeals Council

Plaintiff alleges that the Appeals Council should have granted review to consider the previously discussed report by Dr. Forehand. The Appeals Council denied plaintiff's request for review on April 1, 2010. (Tr. at 1-4.)

Because the question on judicial review is whether the final decision of the Commissioner is supported by substantial evidence, the status of new evidence in a case such as this one is curious. 42 U.S.C. § 405(g). When the Appeals Council denies review, *the decision of the ALJ is the final decision*. See O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994); Keeton v. Dep't of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994); Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992); Russell v. Brown, 856 F.2d 81, 83-84 (9th Cir. 1988); 20 C.F.R. §§ 404.955; 404.967 et seq.; 416.1455; 416.1467 et seq.; cf. Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998) (stating the District Court nevertheless may review the Appeals Council's denial of review if based on Appeals Council's determination that new evidence was

not "new" and "material."); accord Eads v. Secretary of Dep't of Health and Human Servs., 983 F.2d 815, 817 (7th Cir. 1993).[4]

Because the Commissioner does not contest whether the evidence submitted to the Appeals Council should be considered by this court, based on Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993), this new evidence will become part of the record on review, even though that evidence was never before the ALJ. "We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review." Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir.2000).

The additional evidence submitted to the Appeals Council is the aforementioned form report by Dr. Forehand, plaintiff's treating psychiatrist. As already discussed, this check-off form contained little in the way of findings, and was not accompanied by any treating records or any other objective evidence in support.

Furthermore, it is well established that retrospective opinions are even less persuasive in the specialty of mental health. "The opinion of a psychiatrist who examines the claimant after the expiration of his disability insured status, however, is entitled to less weight than the opinion of a psychiatrist who completed a contemporaneous exam." Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) ("After-the-fact psychiatric diagnoses are notoriously unreliable"); Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir.1989) (new medical report following adverse administrative decision denying benefits carries little, if any, weight) (citing Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.1985)). Here, Dr. Forehand's report is dated March 7, 2008, almost two years after plaintiff's last insured date of June 30, 2006.

\\\\

---

[4] Only if the Appeals Council grants review, and then issues a decision on the merits does the Appeals Council's decision become the final decision of the Commissioner. Russell, 856 F.2d at 83-84; Browning, 958 F.2d at 822.

The Appeals Council did not err in denying plaintiff's request for review on this basis. This report adds no probative value to the record.

C. Whether the ALJ Improperly Rejected Plaintiff's Testimony

Plaintiff contends that the ALJ rejected his statements of functional limitations without clear and convincing reasons.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. July 8, 2009); Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc). The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. Bunnell at 345-46. If the record contains objective medical evidence of an impairment reasonably expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions. See Vasquez, 572 F.3d at 591. The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities.[5] Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61

---

[5] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001)

11

1  FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party
2  testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony
3  and conduct, may also be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792
4  (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han
5  v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.
6  Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Plaintiff is required to show only that
7  her impairment "could reasonably have caused some degree of the symptom."  Vasquez, 572
8  F.3d at 591, *quoting* Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007), Smolen, 80 F.3d
9  at 1282.  Absent affirmative evidence demonstrating malingering, the reasons for rejecting
10  applicant testimony must be specific, clear and convincing.  Vasquez, 572 F.3d at 591.

11             Plaintiff's credibility was properly questioned for the reasons pointed out by the
12  ALJ.  He first noted that despite apparent difficulty in getting along with people, plaintiff was
13  able to get along fine with other prisoners during his more than 25 years in prison.  He added that
14  despite his claim that he had been psychiatrically hospitalized while in prison, he stopped taking
15  psychiatric medication in August, 2001, and did well without it until August, 2002.  (Tr. at 18.)
16  Elsewhere, it is indicated that plaintiff was motivated to go off medication so he could be housed
17  at a farm rather than prison.  He was reported to be doing well without medication.  (Id. at 189.)
18  Furthermore, there are no records supporting plaintiff's claim of two psychiatric hospitalizations.
19  Although plaintiff refers to a CDC record which notes two hospitalizations, the form is based on
20  plaintiff's statements to the transcriber.  (Id. at 184.)  There is no independent source for the
21  record of hospitalizations.  Furthermore, plaintiff's prison records do not indicate any problems
22  getting along with fellow inmates or staff.  (Id. at 174-89.)
23  \\\\
24  \\\\
25  _____
26  (quotation and citation omitted).

1         The ALJ further explained that plaintiff was entrusted with watching and taking
2   23 grandchildren to the park, as well as supervising his 17 year old daughter,[6] who was enrolled
3   in a home study program during the day. The ALJ also focused on plaintiff's lack of mental
4   health treatment over the years and during the time he was able to work in the concrete business,
5   which lasted almost two years. (Id. at 19.) Plaintiff points to his own testimony wherein he
6   stated that he had been in therapy twice a week for six months preceding the hearing. (Id. at 47.)
7   There are no records indicating such treatment, but even if true, this belated therapy with little
8   else in the way of treatment is not helpful to plaintiff's case. See www.mayoclinic.com (noting
9   recommended treatment includes psychotherapy, stress and anger management skills,
10  medications, and hospitalization, depending on the severity of symptoms). The absence of
11  regular medical treatment during the alleged period of disability is a factor to be considered.
12  Morehead v. Astrue, 2008 WL 3891464, *5 (E.D. Wash. 2008). See Meanel v. Apfel, 172 F.3d
13  1111, 1114 (9th Cir. 1999) (plaintiff's claim of extreme pain inconsistent with "minimal,
14  conservative treatment" received); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ
15  correctly considered conservative nature of treatment in determining credibility).

16        Along with the few medical records discussed in the previous section, plaintiff's
17  prison records fail to demonstrate violent behavior as plaintiff suggests. A November 30, 2005
18  exam was normal, indicating normal psychiatric status, but a psychiatric consult was indicated.
19  (Id. at 179.) There are no records indicating that such a consult was conducted.

20        In addition to the aforementioned activities, plaintiff's other activities belie his
21  claim of mental health impairment to the degree alleged. For example, in addition to household
22  chores, which did not require interaction with others, plaintiff went grocery shopping unattended,
23  which did require such interaction. (Id. at 17, 193.) He also showed his kids how to change the
24  oil in the car. His grandchildren visited "a lot." (Id. at 40.) He has also been in two fistfights in

---

26      [6] Plaintiff denies that he supervised this daughter, but concedes that he was at home with her during the day and kept an eye on her, without consequence. (Id. at 33.)

his neighborhood, but both times, the police came and did not arrest him, presumably because he was able to control his behavior when interacting with them. (Id. at 42.)

"Credibility determinations are the province of the ALJ." Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.1995). In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the [Commissioner]. See Yuckert v. Bowen, 841 F.2d 303, 307 (9th Cir. 1988); Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)." Morgan v. Apfel, 169 F. 3d at 599. The ALJ properly analyzed the evidence in relation to the appropriate factors required by the Bunnell line of cases.

### D. Lay Witness Testimony

Plaintiff makes another assertion, that the ALJ improperly rejected the lay opinion of plaintiff's wife, Sylvia Ramirez, who testified regarding plaintiff's functional limitations.

An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). Similar to the ALJ's role in evaluating the testimony of a claimant, when evaluating the testimony of a lay witness "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The Ninth Circuit has held that the ALJ must properly discuss lay witness testimony, and that any failure to do so is not harmless unless no reasonable ALJ, when fully crediting the testimony, could have come to a different disability determination. Stout v. Commissioner, 454 F.3d 1050 (9th Cir. 2006). This standard is extremely high and rivals, if not surpasses, the Chapman harmless error standard in criminal law (error harmless only if no

reasonable doubt about its lack of effect).

Here, the ALJ did discuss the testimony of Mrs. Ramirez, which was that she and the children had been to counseling to learn how to understand plaintiff's condition, and to have patience with it. (Id. at 19.) The ALJ then explained why he gave testimony of plaintiff's wife little weight:

> Even if it is very difficult for Ms. Ramirez and the children to deal with the claimant, their coping with the claimant's impairment is not an impairment in and of itself. Ms. Ramirez trusts the claimant around to take care of the children alone. Even if the claimant is very difficult to live with, that does not necessarily mean that the claimant would be unable to perform work activity with limited personal contact.

(Id. at 19.) These reasons for rejecting Mrs. Ramirez's testimony are germane and specific to this witness. Plaintiff asserts that the ALJ failed to address certain parts of her testimony. For example, Mrs. Ramirez stated that plaintiff could be around their kids unsupervised because they were older.[7] This statement does not conflict with plaintiff's ability to work around others, as co-workers would be even older than plaintiff's children. Plaintiff fails to mention his wife's testimony that plaintiff recently switched medication and it was doing some good. (Id. at 52.)

Plaintiff also asserts that the ALJ failed to mention his failed work attempt after he got out of prison. Mrs. Ramirez had testified that he worked with the church minister, but that he got into trouble and had to stop. (Id. at 54.) Nevertheless, she also testified that plaintiff's symptoms were even worse prior to going to prison, and that was during the time he was able to hold a concrete job for almost two years. (Id. at 52, 131.) As these points raised by plaintiff are refuted by Mrs. Ramirez's other statements or other evidence, it was not error for the ALJ to fail to mention every single statement in her testimony. The ALJ's finding that plaintiff could perform jobs involving simple, routine, and repetitive tasks, with limited public contact, more than compensated for the limitations supported by the other evidence of record.

---

[7] Plaintiff and his wife had seventeen year old twins.

15

E. <u>Hypothetical to the Vocational Expert</u>

Plaintiff's last claim is that the ALJ failed to credit the expert's testimony in response to the hypothetical which accurately reflected plaintiff's limitations.

Hypothetical questions posed to a vocational expert must include all the substantial, supported physical and mental functional limitations of the particular claimant. <u>Flores v. Shalala</u>, 49 F.3d 562, 570-71 (9th Cir.1995); see <u>Light v. Social Sec. Admin.</u>, 119 F.3d 789, 793 (9th Cir.1997). If a hypothetical does not reflect all the functional limitations, the expert's testimony as to available jobs in the national economy has no evidentiary value. <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991). <u>But</u> <u>see</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947 (9th Cir. 2002) (approving hypothetical directing VE to credit specific testimony which VE had just heard); <u>Matthews v. Shalala</u>, 10 F.3d 678 (9th Cir. 1993) (failing to include all limitations in a hypothetical may be harmless error if the ALJ's conclusions are supported by other reliable evidence). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, substantial evidence must support the hypothetical which ultimately serves as the basis for the ALJ's determination. <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988).[8]

The hypothetical upon which the ALJ should have relied, according to plaintiff, was such that plaintiff "could never interact appropriately with supervisors, could never work around the public, and could not handle any normal work stress." With these limitations, the VE responded that there were no available jobs. Plaintiff bases his argument in favor of these limitations on the medical opinions of Drs. Von Bolschwing and Forehand. Both of these opinions were found to have been properly rejected by the ALJ and/or Appeals Council. <u>See</u> discussion *supra*. As these limitations are not supported by substantial evidence in the record,

---

[8] Similarly, "[t]he ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 756 (9th Cir. 1989). The ALJ is free to accept them if they are supported by substantial evidence or reject them if they are not. <u>Id</u>. at 756-757.

the ALJ was not required to include them in the hypothetical.

Instead, the ALJ relied on the hypothetical which permitted plaintiff to do a full range of work at all levels, with only occasional contact with the general public, and limited to simple, routine and repetitive tasks. (Id. at 16, 61.)  The vocational expert concluded that plaintiff could do the jobs of industrial cleaner, kitchen helper, and warehouse worker. (Id. at 61.) The undersigned finds that substantial evidence supports these limitations.

CONCLUSION

Accordingly, the court finds the ALJ's assessment is fully supported by substantial evidence in the record.  Plaintiff's Motion for Summary Judgment is denied, the Commissioner's Cross Motion for Summary Judgment is granted, and the Clerk is directed to enter Judgment for the Commissioner.

DATED: June 9, 2011

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Herrera1317.ss.wpd

17